IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**HAROLD C. GROEL,**

       **Petitioner,**

v.                                                    No.  13-cv-1008-DRH-CJP

**DOUG SIMMONS,**

       **Respondent.**[1]

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

In June, 2009, a jury in Tazewell County, Illinois, convicted Harold C. Groel of one count of criminal sexual assault in violation of 720 ILCS 5/12-13(a)(4). He was sentenced to fifteen years imprisonment.

The version of the statute in effect at that time provided that a person commits the offense of criminal sexual assault if he:

> commits an act of sexual penetration with a victim who was at least 13 years of age but under 18 years of age when the act was committed and the accused was 17 years of age or over and held a position of trust, authority or supervision in relation to the victim.

Now before the Court is Groel's petition for habeas relief pursuant to 28 U.S.C. §2254 (Doc. 1).

---

[1] Petitioner is assigned to Jacksonville Correctional Center. Doug Simmons is the current warden of that institution. See, https://www.illinois.gov/idoc/facilities, visited on March 17, 2017. Pursuant to Rule 2(a) of the Rules Governing § 2254 Cases in the United States District Courts and to Fed. R. Civ. P. 25(d), Doug Simmons is ordered substituted as respondent herein.

### Grounds for Habeas Relief

Petitioner was still pursuing state remedies when the filed his habeas petition. On September 13, 2016, the Court entered an order declining to stay the petition until state remedies were exhausted. See, Doc. 50. In that Order, the Court explained that the petition set forth separate, but related, grounds for habeas relief:

1. The state court erred "in finding the defendant guilty, without requiring further analysis or more definitive definition of the positions [of] authority, supervision, and trust and how it applies to the defendant." (Doc. 1, p. 6).

2. The failure to specify which of the three terms allegedly applied to him resulted in "having the defendant prove that he did not fall into any of the positions and that to have all three positions relieves the State of it's [sic] burden of proof denying him due process of law." (Doc. 1, p. 10).

The Court will refer to the first ground as the "definition claim" and to the second ground as the "notice claim."

The petition also argued that there was not sufficient evidence that petitioner occupied a position of trust, authority or supervision in relation to the victim. See, Doc. 1, pp. 7-8. However, in his reply to the original answer, petitioner definitively stated that he is not challenging the sufficiency of the evidence. See, Doc. 21, p. 1, ¶2.

### Relevant Facts and Procedural History

This summary of the facts is derived from the decision of the Illinois Appellate Court, Third District, denying petitioner's direct appeal. A copy of the

decision is located at Doc. 21, Ex. 2, pp. 1-11.[2]  State court determinations of facts "shall be presumed to be correct" and can only be rebutted by "clear and convincing evidence."  28 U.S.C. §2254(e)(1).  Petitioner has not offered any evidence to rebut the state court's determinations of fact.

Groel was initially charged with five counts of criminal sexual assault against three minor female victims (T.A., S.N. and A.P.), and one count of endangering the life or health of a child (S.N.) by providing alcoholic beverages and drugs.  After S.N. failed to appear at trial as scheduled, the three counts involving her were dismissed.  Defendant was convicted only on one count involving T.A.  Ex. 2, pp. 2, 4.

T.A., S.N. and A.P. were foster children in the custody of petitioner's mother-in-law, Judy Morris.  Petitioner's wife, Cathy Groel, sometimes "babysat" one or more of her mother's foster children.  T.A. was twenty-one years old at the time of the trial.  She testified that she entered the foster care system at the age of eight, and was placed with Judy Morris when she was thirteen years old.  She testified that Judy Morris would leave her with Cathy Groel at the home Cathy Groel shared with petitioner while Judy Morris went to play bingo.  T.A. testified that, when she was fourteen years old, petitioner had vaginal intercourse with her at his home.  She said that petitioner had vaginal intercourse with her on other occasions as well, and that he had stopped having intercourse with her when another foster child, S.N., moved into Judy Morris' home.  Ex. 2, pp. 3-4.

---

[2] The Court uses the exhibit and page numbers that are assigned by the CM/ECF electronic filing system.

According to the state court, T.A. testified that, "in the beginning, her relationship with defendant was similar to spending time with family. She explained, 'we were family,' and mentioned 'we' went out to eat and 'watched movies as a family,' and 'he was [a] nice regular guy, cool.'" She spent the night at the Groels' home and sometimes babysat for the Groels' children, whom she said she loved. Ex. 2, p. 10.

On direct appeal, Groel raised the following issues:

1. He was not proven guilty beyond a reasonable doubt.

2. The judge erred in allowing the state to introduce other-conduct evidence to show his propensity to commit this type of offense.

3. Admission of his prior conviction for endangering the life or health of a child was error.

4. The state's closing argument was improper.

Ex. 2, pp. 13-17.

Groel's petition for leave to appeal, which was filed by counsel, raised only the following issue:

Leave to appeal should be granted so that this Court can clarify the meaning of "position of trust, authority, or supervision," because the appellate court decisions have failed to furnish a definition of the term that provides fair notice and a proper standard for adjudication.

Doc. 21, Ex. 3, p. 79.

The Supreme Court denied leave to appeal on September 26, 2012. Ex. 3, p. 109.

Groel did not file a state postconviction petition under 720 ILCS 5/122-1. However, about three months before he filed his habeas petition here, he filed a

state court petition for relief from judgment pursuant to 735 ILCS §5/2-1401.  As is relevant here, the petition argued that the judgment was void because "the indictment did not state an offense nor adequately informed [sic] the defendant of the offense of criminal sexual conduct."  Doc. 36, Ex. 1.  The Circuit Court denied the petition on May 2, 2014.  Doc. 36, Ex. 3.  Groel appealed.  The Appellate Court, Third District, affirmed on October 31, 2016.   A copy of that order is located at Doc. 53, pp. 4-8.

### **Motion to Proceed with Original Habeas Petition**

This Court determined that stay and abeyance pending exhaustion of state remedies as to the notice claim was not warranted for the reasons set forth in Doc. 50.  This Court directed petitioner to choose whether he wanted to proceed only on his exhausted definition claim, or to voluntarily dismiss the habeas petition without prejudice and refile after state remedies were exhausted.

On November 14, 2016, Groel filed a Motion to Proceed with Original Habeas Petition, Doc. 53, indicating that state remedies had been exhausted as to the definition claim because the Appellate Court affirmed the denial of his petition for relief from judgment.  Petitioner did not say whether he filed a petition for leave to appeal.

The Appellate Court issued its Rule 23 Order on October 31, 2016.  Petitioner had 35 days in which to file a petition for leave to appeal.  Illinois Supreme Court Rule 315(b).  On March 9, 2017, this Court was informed by the Clerk of the Illinois Supreme Court that Groel did not file a petition for leave to

appeal. As state remedies have now been exhausted, the Motion to Proceed with Original Habeas Petition (Doc. 53) is **GRANTED**.

## Applicable Legal Standards

**1.    Law Applicable §2254 Petition**

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002). "AEDPA's standard is intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015)(internal citations omitted).

Habeas is *not* yet another round of appellate review. 28 U.S.C. §2254(d) restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases. " *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012), citing *Williams v. Taylor*, 120 S. Ct. 1495, (2000). A state court decision is an "unreasonable application of" clearly

established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Federal habeas review serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786–787.  "A state court's decision is reasonable, even if incorrect in our independent judgment, so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017)(internal citations omitted.)

2. **Timeliness, Exhaustion and Procedural Default**

Respondent concedes that the petition was timely filed.  See, Doc. 21, p. 4. A habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default.  *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because

"the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 119 S.Ct. 1728, 1732 (1999), see also 28 U.S.C. §2254(c).  Under the Illinois two-tiered appeals process, petitioners such as Groel must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id.* at 1731-1733.

### Analysis

Both of petitioner's grounds are procedurally defaulted because they were not raised for one full round of state court review. *O'Sullivan v. Boerckel*, 119 S.Ct. at 1731-1733. The first ground, the definition claim, was raised for the first time in the petition for leave to appeal. The second ground, the notice claim, is procedurally defaulted because petitioner did not file a petition for leave to appeal. The notice claim is also procedurally defaulted because the state court rejected it on the independent and adequate grounds of timeliness and waiver. Timeliness and waiver of a claim for failure to assert it on direct appeal are both independent and adequate state grounds. *Walker v. Martin*, 131 S. Ct. 1120 (2011)(state timeliness rule); *Johnson v. Lee*, 136 S. Ct. 1802 (2016)(state waiver rule). Respondent has not raised procedural default. However, for the following reasons, the Court concludes that it should raise the issue *sua sponte*.

Procedural default is not jurisdictional, but it is an affirmative defense which can be waived. *Blackmon v. Williams*, 823 F.3d 1088, 1100 (7th Cir.

2016). Regardless of respondent's failure to raise the defense, this Court may *sua sponte* consider procedural default where the respondent has not waived the issue. *Henderson v. Thieret*, 859 F.2d 492, 498 (7th Cir. 1988). If, however, respondent has waived the defense, the Court may not override that waiver. *Ibid.* See also, *Perruquet v. Briley*, 390 F.3d 505, 518 (7th Cir. 2004), noting a "line of cases at the circuit level acknowledging that federal courts generally have the discretion to raise the subject of procedural default *sua sponte*."

Waiver is distinct from forfeiture of a defense. Waiver is the intentional relinquishment of the right to assert a defense; waiver can be explicit or implicit. *Blackmon*, 823 F.3d at 1100, citing *Perruquet,* 390 F.3d at 515.[3] Forfeiture, on the other hand, is the inadvertent failure to raise an issue. *Perruquet, Ibid.*

Here, there was no explicit waiver of the defense of procedural default as to the definition claim. In fact, respondent did not discuss the definition claim at all in his original answer, Doc, 21, focusing instead on petitioner's challenge to the sufficiency of the evidence. In his supplemental answer, Doc. 34, respondent focused exclusively on the notice claim, arguing that state remedies had not been exhausted as to that claim.

There was no explicit waiver of procedural default as to the notice claim. It only became apparent that the notice claim was procedurally defaulted when

---

[3] 28 U.S.C. §2254(b)(3) provides that, as to the defense of failure to exhaust state remedies, waiver of the defense must be express, i.e., there can be no implicit waiver. In *Perruquet*, the Seventh Circuit noted that other courts have held that §2254(b)(3) applies to the defense of procedural default as well, but declined to decide the issue because the state had not even implicitly waived the defense. *Perruquet*, 390 F.3d at 515-516.

petitioner filed his Motion for Leave to Proceed with Original Habeas Petition, Doc. 53.

In the absence of an explicit waiver, the Court must now determine whether there was an implicit waiver. In general, "silence on the subject of procedural default is normally not enough, standing alone, to demonstrate the intent to relinquish the defense that is the essence of true waiver." *Perruquet*, 390 F.3d at 517, and cases cited therein. Rather, an implicit waiver of procedural default occurs where the defense that the respondent does raise is inconsistent with an intent to preserve the defense of procedural default. *Perruquet*, 390 F.3d at 516. For example, where the respondent argues the merits of one claim but argues that a second claim is procedurally defaulted, it has implicitly waived the argument that the first claim is also procedurally defaulted. *Ibid.* In contrast, where a petitioner only raised a particular claim in in his supplemental memorandum, to which the court did not order the state to respond, the Seventh Circuit held that there was no implicit waiver of procedural default as to that claim. *Blackmon*, 823 F.3d at 1100.

Respondent's failure to argue procedural default here is analogous to the situation in *Blackmon*. The original answer focused on the sufficiency of the evidence. That focus was understandable, since petitioner recited the standard for a sufficiency of the evidence claim at length in his petition, giving rise to the reasonable conclusion that he was challenging the sufficiency of the evidence. Further, the habeas petition stated that he had raised a sufficiency of the evidence

claim on direct appeal. See, Doc. 1, p. 2, ¶3 (Petitioner "was not proven guilty of criminal sexual assault beyond a reasonable doubt. . . .") It was not until he filed his reply that he disavowed an intention to challenge the sufficiency of the evidence. At that point, the Court directed the respondent to file an amended answer. Respondent did so, but the amended answer addressed only the notice claim. See, Doc. 34. Respondent has never addressed the definition claim head-on. And, as explained above, procedural default as to the notice claim only became apparent when petitioner filed his Motion at Doc. 53. Thus, this case presents a simple failure to assert procedural default, rather than an intentional relinquishment of the defense. Accordingly, there is no implicit waiver here.

This Court is aware that it is not required to *sua sponte* raise the issue of procedural default, and whether to do so is a discretionary matter. *Perruquet*, 309 F.3d at 519. This Court concludes that it is appropriate to do so here, for much the same reasons cited by the Seventh Circuit in *Perruquet*.

In *Perruquet*, the state raised procedural default for the first time on appeal. The Seventh Circuit held that it was appropriate to consider the defense even though the state had not raised it in the district court because the state had not intentionally relinquished the defense in the district court. Even though the Court here is raising procedural default *sua sponte*, the rationale of *Perruquet* is applicable:

> First, . . . the procedural default in this case is clear: Perruquet failed to raise his due process claim at any level of state-court review. Second, because no Illinois court was ever given the opportunity to pass on the merits of Perruquet's constitutional claim, comity and federalism principles

>   weigh strongly against permitting Perruquet to assert the claim in federal court. Third, if we were to reach the merits of Perruquet's constitutional claim, we necessarily would have to do so *de novo*, as there is no state-court decision we can look to for an evaluation of this claim. [internal citations omitted.] This would be inconsistent with the high level of deference to state-court decisions that Congress mandated when it passed the Antiterrorism and Effective Death Penalty Act of 1996. [internal citations omitted.] It would also amount to a windfall for Perruquet, who would win plenary review of a claim that he never presented to the Illinois courts, whereas habeas petitioners who properly present their claims to state courts first are entitled only to the extremely narrow review mandated by section 2254(d).  Fourth and finally, Perruquet's claim would call upon us to reconcile a State's prerogative to define the elements of crimes and affirmative defenses, [internal citations omitted] with a defendant's right to present a complete defense to the charges against him [internal citations omitted].

*Perruquet*, 390 F.3d at 518.

It is clear that Groel procedurally defaulted his claim that the failure to define the statutory terms violated his due process rights. He raised no such claim in his direct appeal.  In fact, his brief noted that Illinois courts use the common dictionary meanings of the words "trust," "authority," and "supervision." Doc. 21, Ex. 2, p. 35.   There was no suggestion in the brief that he was arguing that the use of the common dictionary meanings in any way violated his Constitutional rights.  Rather, his argument in the Appellate Court was that the evidence was insufficient to prove beyond a reasonable doubt that any of those common dictionary meanings applied to him.  The definition claim was raised for the first time in the petition for leave to appeal, which was denied.  It is also clear that the notice claim is procedurally defaulted.

Because of petitioner's failure to properly raise his claims in state court, there is no state court decision for this Court to review.  As in *Perruquet*, review

here would have to be *de novo*, and would result in a windfall to Groel because his claims would not be subject to the exacting standard of §2254(d), which would apply if he had properly presented his claims for one full round of state court review.

In sum, this Court concludes that both of petitioner's grounds for habeas relief are procedurally defaulted and that respondent did not waive the defense of procedural default.

Federal habeas review is precluded unless petitioner has demonstrated actual innocence, or cause and prejudice. See, *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012); *Gladney v. Pollard*, 799 F.3d 889 (7th Cir. 2015). Groel has not made any attempt to show cause for his default or that failure to consider his arguments would result in a miscarriage of justice. This Court cannot make the cause and prejudice argument for him. *Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014). He likewise has not made a claim of actual innocence sufficient to overcome his procedural default. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

### Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).

In order for a certificate of appealability to issue, petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." See, *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show *both* that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, *Ibid.*

Here, no reasonable jurist would find it debatable whether this Court's ruling on procedural default was correct. Therefore, **the Court DENIES a certificate of appealability.**

## Conclusion

Harold C. Groel's petition for habeas relief under 28 U.S.C. §2254 **(Doc. 1)** is **DENIED**. This cause of action is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 22nd day of March, 2017.

Digitally signed by Judge David R. Herndon
Date: 2017.03.22 15:42:02 -05'00'

**UNITED STATES DISTRICT JUDGE**

**Notice**

If petitioner wishes to appeal the dismissal or denial of his petition, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A).  A motion for leave to appeal in forma pauperis should set forth the issues petitioner plans to present on appeal.  See Fed. R. App. P. 24(a)(1)(C).

A certificate of appealability is required to appeal from the dismissal or denial of a §2254 petition.  Rule 11 of the Rules Governing §2254 Cases requires that, when entering a final order adverse to the petitioner, the district court must issue or deny a certificate of appealability.  Here, the Court has denied a certificate.  In order to appeal the dismissal or denial of his petition, petitioner must obtain a certificate of appealability from the court of appeals.

Petitioner cannot appeal from this Court's denial of a certificate of appealability.  Further, a motion to reconsider the denial does not extend the time for appeal.  See, Rule 11(a).

Petitioner is further advised that a motion to alter or amend the judgment filed pursuant to Federal Rule of Civil Procedure 59(e) must be filed no later than 28 days after the entry of the judgment—a deadline that cannot be extended. A proper and timely Rule 59(e) motion may toll the thirty day appeal deadline. Other motions, including a Rule 60 motion for relief from a final judgment, order, or proceeding, do not toll the deadline for an appeal.